United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE CALIFORNIA WINERY WORKERS PENSION TRUST FUND,<br><br>    Plaintiff/Counter-Defendant,<br>  v.<br>UNION BANK N.A.,<br>    Defendant/Counter-Plaintiff.<br>_____/<br>UNION BANK N.A.,<br>    Third-Party Plaintiff.<br>  v.<br>CORY BROWN, et al.<br>    Third-Party Defendants.<br>_____/ | No. C 10-02240 SI<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM AND THIRD-PARTY DEFENDANTS' MOTION TO DISMISS THIRD-PARTY COMPLAINT** |

Currently before the Court is The Board of Trustees of the California Winery Workers Pension Trust Fund's motion to dismiss defendant Union Bank NA's Amended Counterclaim and third-party defendants' motion to dismiss Union Bank's Third-Party Complaint. Those motions are set for hearing on April 8, 2011. Pursuant to Civil Local Rule 7-1(b), the Court determines that these matters are appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, plaintiff and third-party defendants' motions to dismiss are GRANTED.

# BACKGROUND

This action seeks recovery under the Employee Retirement Income Security Act ("ERISA") on behalf of the California Winery Workers' Pension Trust Fund ("Fund"). It was filed by plaintiff, the Board of Trustees of the Fund, in its capacity as the fiduciary of the Fund. Defendant, Union Bank N.A., is alleged to have violated its fiduciary duties under ERISA and violated the Corporate Co-Trustee Agreement and Securities Lending Agreement (collectively, "Agreements") entered into with plaintiff, by engaging in investment activities which involved inappropriate risk, led to inappropriate losses and were in direct violation of the terms and conditions of the Agreements. Complaint, ¶ 1.[1] Plaintiff alleges that it entered into a Corporate Co-Trustee Agreement ("Custodian Agreement") with Union Bank in February 2000 and a Securities Lending Services Agreement ("Securities Lending Agreement") in February 2006. Complaint, ¶¶ 8-9.

Under the Custodian Agreement, Union Bank is a custodian of the Fund's assets. *Id.*, ¶ 8. Under the Securities Lending Agreement, Union Bank would lend out securities ("lendable securities") of the Fund to third-parties who paid cash collateral in return. *Id.*, ¶ 11. Union Bank would then invest the cash collateral in a further investment vehicle for the purpose of increasing the Fund's return on the monies, as compared to the returns the monies would generate if held as cash. *Id.* Plaintiff alleges that Union Bank represented that it used a comprehensive risk assessment in order to mitigate risks associated with securities lending and was required to follow specific investment guidelines with respect to those investments, and abide by its general fiduciary duties imposed by ERISA. *Id.*, ¶¶ 12-15, 19-23, 24-32. Plaintiff also alleges that under the Securities Lending Agreement, Union Bank would not share in any risks from the securities investments – those would be borne by the Fund solely – but Union Bank would benefit by receiving 35% of the earnings from collateral investments. *Id.*, ¶¶ 16-17. As a result, plaintiff alleges that Union Bank was incentivized to take risks with the investments of the cash collateral that breached its fiduciary duties to the Fund.

The breach of fiduciary duty claims rest primarily on two transactions undertaken by Union

---

[1] Pursuant to the parties' stipulation [Docket No. 9], the only operative claim in the complaint is for Breach of the Fiduciary Duty under ERISA Sections 404(a), 409 and 502(a) [29 U.S.C. §§1104(a), 1109, and 1132(a)]. *See* Complaint at 16.

2

Bank with the Fund's collateral cash. Plaintiff first complains that Union Bank breached its fiduciary duties by investing in a three-year Corporate Obligation, a Lehman Brothers bond ("Lehman bond"), with $5 million of the Fund's cash collateral, because the purchase of that bond exceeded the 5% per issuer concentration limit set by the Agreements and may have also exceeded the aggregate portfolio concentration limit of 25% for Corporate Obligations. *Id*., ¶¶34-35. The bond subsequently lost 77% of its value. *Id*., ¶ 37. Plaintiff also alleges that Union Bank breached its fiduciary duties with respect to the Lehman bond because it should have known the bond was in jeopardy of defaulting, and it should have known that purchasing such a large bond for such a long term was a risky and imprudent investment strategy for a securities lending program. *Id*., ¶¶ 38-40.

The second transaction that forms the basis of plaintiff's complaint is Union Bank's purchase of $5 million in Asset Backed Securities, the Higher Education Series 2004-1 A10 bond ("Higher Education Bond"), with the Fund's collateral cash. *Id*., ¶ 57. Plaintiff assert that the total amount of the purchase of these securities exceeded the 5% per issuer concentration limit set by the Agreements. *Id*., ¶ 58. Plaintiff also states that the Higher Education bond was comprised of auction-rate securities which, since early 2008, have suffered from a market collapse creating severe liquidity problems with holdings like the Higher Education bond. *Id*., ¶ 60. Plaintiff alleges that Union Bank should have known of the Higher Education bond's potential for liquidity problems and given the lack of a specific maturity date on the Higher Education bond, Union Bank should have known that it could not have reasonably been expected to return the price of the securities. *Id.*, ¶¶ 60-64.

In response to the filing of this action, Union Bank filed two counterclaims under ERISA based on contractual indemnity clauses in the Agreements. *See* Defendant Union Bank's Amended Counterclaim for Indemnification, Docket No. 26. Union Bank's counterclaims rest on a provision of the Custodian Agreement which provides that: "The Board of Trustees shall indemnify and hold the Corporate Co-trustee [Union Bank] harmless from and against any loss or liability, including reasonable attorneys' fees" that arise in connection with specific acts. Counterclaim, ¶ 9. Union Bank also relies on a provision of the Securities Lending Agreement which provides: "Principal shall indemnify, keep indemnified, and hold harmless the Bank" against losses, including without limitation attorneys' fees and expenses, suffered as a result of "the negligence or willful misconduct of the Principal in the

3

performance of its duties" under the Agreement. *Id.*, ¶ 10.

Union Bank asserts that it purchased the securities at issue using a method for calculating concentration limits that plaintiff had agreed to and approved, specifically calculating the concentration limits based on the total portfolio of lendable securities. Counterclaim, ¶ 12; *see also* Third-Party Complaint ¶¶ 33, 34. It wasn't until after Lehman Brothers had failed that plaintiff contested the method of calculating concentration limits – expressing investment concentration as a percentage calculated by dividing the value of each issue or issue type by the net asset value ((NAV) of a customer's total portfolio of lendable securities – and alleged that Union Bank had exceeded those limits in the purchase of the Lehman and Higher Education bonds. Counterclaim, ¶ 12, 14; Third-Party Complaint, ¶ 50 (noting that after September 2008, plaintiff informed Union Bank that the calculation of concentration limits should have been based only on the value of the cash collateral rather than the total portfolio of lendable securities). Union Bank also alleges that plaintiff received and reviewed monthly statements that disclosed the net asset value (NAV) and percentage attributable to each corporate obligation, and show Union Bank's method of calculation of concentration limits. Counterclaim, ¶¶ 20, 21.

On this basis, Union Bank asserts that because the Board members operated as co-trustees of the Fund and either acquiesced in Union Bank's calculation of portfolio concentration limits or should have notified Union Bank that it disagreed with the method used, plaintiff is equally liable for any breach of the fiduciary duty. *Id.*, ¶¶ 24-28, 31, 33. As a result, under the Agreements, Union Bank asserts that plaintiff must "indemnify and hold harmless Union Bank against any loss or liability, including without limitation interim attorneys' fees and costs" that stem from defending this action. Counterclaim, ¶¶ 37, 41.

Union Bank also filed a third-party complaint against the individuals on the Fund's Board of Trustees seeking recovery on behalf of the Fund for any losses the Fund suffered as a result of Union Bank's conduct because the Board members operated as co-trustees of the Fund and, as described above, either acquiesced in Union Bank's determination of calculating portfolio concentration limits or should have notified Union Bank that it disagreed with the method Union Bank used to determine portfolio concentration limits. *See* Third Party Complaint, Docket No. 18, ¶ 4.

Currently before the Court are plaintiff's motion to dismiss the counterclaim and third-party

4

defendants' motion to dismiss the Third-Party Complaint.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.     Motion to Dismiss Counterclaim**

In response to the complaint, Union Bank filed an amended counterclaim alleging a count for "Indemnification under an ERISA Plan Document: the Custodian Agreement" and a count for "Indemnification under an ERISA Plan Document: the Securities Lending Agreement." Amended Counterclaim [Docket No. 26] at 26. Through those claims, Union Bank seeks to require plaintiff – the

5

Board of Trustees of the Fund – to indemnify Union Bank for "any loss or liability, including without limitation interim attorneys' fees and costs and post-judgment attorneys' fees and costs." Counterclaim at 26-27. In its Opposition to the motion to dismiss, Union Bank clarified that through its counterclaim it is *only* seeking indemnification for the attorneys fees and costs of defending this action and not indemnification of underlying liability (if any), despite the broad language used in the counterclaim itself. *See* Opposition to MTD Counterclaim [Docket No. 38] at 1. Union Bank claims it has standing to bring these claims under the federal common law of ERISA as well as 29 U.S.C. §§ 1132(a)(2), which allows plan fiduciaries to bring civil action for appropriate relief under Section 1109, and Section 1132(a)(3) which allows plan fiduciaries to bring civil actions for equitable relief to benefit the plan. *Id.*, ¶ 7.

Generally, in order to have standing to assert a claim under ERISA, a party must assert a claim for relief under 29 U.S.C. § 1132 (also known as Section 502(a)). *See, e.g., Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (U.S. 1990) ("Congress intended § 502(a) to be the exclusive remedy for rights guaranteed under ERISA."). As the Supreme Court has explained:

> [T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (U.S. 1987) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)).

### A. Section 502(a)(2)

Under Section 502(a)(2) – Section 1132(a)(2) – a civil action may be brought "by the Secretary of Labor, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." Section 1109, in turn provides that fiduciaries can be held personally liable "to make good to the plan any losses to the plan resulting from each such break." 29 U.S.C. § 1109. As such, the Supreme Court has confirmed that Section 502(a)(2) permits recovery for the benefit of the plan alone. *See, e.g.,*

6

*Mass. Mut. Life Ins. Co.*, 473 U.S. at 140-42; *Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412, 1418 (9th Cir. 1991)("Any recovery for a violation of sections 1109 and 1132(a)(2) must be on behalf of the plan as a whole . . . ."). Here Union Bank is not seeking relief for the Fund. It is seeking relief for itself -- indemnity from plaintiff, the Board of Trustees of the Fund, for the attorneys fees and costs Union Bank is expending in defending this action. *See* Counterclaim, ¶¶ 37, 41; *see also* Oppo. MTD Counterclaim at 1. Union Bank does not have standing to seek this relief under Section 502(a)(2).

### B. Section 502(a)(3)

Section 502(a)(3) – Section 1132(a)(3) – of ERISA allows an action to be filed by a fiduciary: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." However, Union Bank is not seeking to enjoin a violation of the ERISA Plan documents at issue. Nor is Union Bank seeking "appropriate equitable relief" to redress a violation of the Plan or otherwise seeking to benefit the Fund or a beneficiary of the Fund. Instead, as other courts in the Ninth Circuit have found, "inter-fiduciary indemnity is not the sort of 'individual' remedy that was envisioned" in enacting section 502(a)(3). *Meoli v. American Med. Servs.*, 35 F. Supp. 2d 761, 765 (S.D. Cal. 1999). The fact that Union Bank in its opposition limits the indemnity it seeks to cover only its attorney fees and costs, makes it clear that Union Bank's counterclaim is not seeking appropriate relief for the Fund under 502(a)(3).

### C. Common Law of ERISA

The Court also rejects Union Bank's argument that it is allowed to seek indemnity through a counterclaim under the common law of ERISA. As noted above, claims for relief under ERISA must be based on Section 502(a). Courts have, on rare occasion, allowed common law claims to be asserted under ERISA, but only where the remedies sought match or tailor remedies already provided under ERISA. *See, e.g., Amalgamated Clothing & Textile Workers Union v. Murdock*, 861 F.2d 1406 (9th Cir. 1988) (allowing a constructive trust remedy under ERISA which "merely tailors the remedy already contained in § 409(a)" for disgorgement).

7

In the Ninth Circuit, however, implying a right of action under ERISA for contribution or indemnification has been largely, if not totally, foreclosed. In *Kim v. Fujikawa*, 871 F.2d 1427 (9th Cir. 1989), the Court rejected the argument that an implied right to contribution was permissible under ERISA. The Court noted that the Supreme Court recognized that "in light of 'ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute,' it seems clear that 'Congress did not intend to authorize other remedies [under ERISA] that it simply forgot to incorporate expressly.'" *Kim*, 871 F.2d at 1432 (quoting *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1984) (internal quotations omitted)). The Court in *Kim* rejected the attempt of one breaching fiduciary to seek contribution from other allegedly breaching fiduciaries, and noted that "implying a right of contribution is particularly inappropriate where, as in this case, the party seeking contribution 'is a member of the class [e.g., fiduciaries] whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class [e.g., ERISA plans],' and where there is no indication in the legislative history 'that Congress was concerned with softening the blow on joint wrongdoers.'" (quoting *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981) (internal quotations omitted)). Following *Kim*, the Ninth Circuit again rejected an attempt by a breaching fiduciary to seek contribution from co-fiduciaries. *See Call v. Sumitomo Bank of California*, 881 F.2d 626 (9th Cir. 1989) (rejecting claim for contribution under ERISA brought by a fiduciary who had settled breach of fiduciary claims with the DOL, and restored money to the plan, against co-fiduciaries who had not participated in the DOL settlement).

Nonetheless, Union Bank relies on *Wells Fargo Bank v. Bourns, Inc.*, 860 F. Supp. 709 (N.D. Cal. 1994), where Wells Fargo, a directed trustee, sought indemnification from the sponsor of the ERISA plan, Bourns, Inc. Wells Fargo sought indemnity to cover its expenses related to a Department of Labor (DOL) investigation into whether the employer/plan sponsor, the employer board of directors, and the plan's investment advisory committee (IAC) had breached their fiduciary duties to the plan.[2] The DOL investigation concluded that Wells Fargo did not breach any fiduciary duty it might have had and Wells Fargo and sought indemnity from Bourns based on the investment agreement Wells Fargo

---

[2] A directed trustee does not have authority to control or invest plan assets. Instead, it takes direction from a named fiduciary. *See* 29 U.S.C. § 1103(a); *see also Wells Fargo*, 860 F.Supp. at 711.

8

entered into with the company, that was separate and apart from the plan. The Court found that the indemnity agreement could be enforced through the common law of ERISA so long as the indemnity agreement did not violate Section 410 (29 U.S.C. § 1110) of ERISA, which makes any agreement that relieves a fiduciary from responsibility for a breach under ERISA as void against public policy. *Id.*, at 714. The Court noted that the purpose of Section 410 was to preclude fiduciaries from avoiding their responsibilities to the detriment of a plan or plan beneficiaries, and noted that no harm would come to the plan at issue because the indemnity agreement was between the employer/plan sponsor and Wells Fargo, not between the plan itself and Wells Fargo, and there was no possibility that the plan or beneficiaries would suffer as a result of the enforcement of the indemnity provision. *Id.*, at 716. Finally, the Court distinguished *Kim* and *Call* as cases seeking "contribution" from co-fiduciaries and not indemnification from the employer (or sponsor of a plan). *Id.*, at 715, n.2.

This Court finds *Wells Fargo* inapposite for a number of reasons. First, the indemnity agreements Union Bank seeks to enforce are part of the ERISA plan, and not a preexisting, separate agreement as in *Wells Fargo*. *See* Third-Party Complaint & Exs. 1-2. Second, the plaintiff in this case – against whom the counterclaim is brought – is the Board of Trustees representing the Fund.[3] Therefore, any recovery would come from the Fund and be to the detriment of the Fund's beneficiaries. As such, enforcement of the indemnification agreements in these circumstances would violate Section 410. Third, the entity seeking indemnity in *Wells Fargo* was a directed trustee which did not have authority and discretion to manage the funds but acted solely at the direction of the Fund's IAC. Here, under the Agreements at issue, Union Bank has substantial discretion to invest the funds, within specific guidelines. *See, e.g.*, Third-Party Complaint, Ex. 2, § II. Finally, the Court does not see a meaningful distinction between claims for contribution – which are disallowed under *Kim* and *Call* – from those seeking indemnification for purposes of determining whether the common law of ERISA allows a right

---

[3] As plaintiff notes, the Fund itself cannot bring a claim for breach of fiduciary duty to seek recovery on behalf of a plan under ERISA, instead the Board must do so on behalf of the Fund. *See e.g., Bowles v. Reade*, 198 F.3d 752, 760-61 (9th Cir. 1999) (noting that Section 502(a) limits standing to sue for civil enforcement of ERISA to ERISA plan participants, beneficiaries, and fiduciaries, and the Secretary of Labor).

9

of action between co-fiduciaries.[4] Other Courts have extended the reasoning of *Kim* and *Call* to attempts to bring actions under ERISA for indemnification. *See, e.g., Meoli v. American Med. Servs.*, 35 F. Supp. 2d 761, 765 (S.D. Cal. 1999) (rejecting claim for indemnity under federal common law of ERISA); *see also Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189, 195 (D. Mass. 2008) ("ERISA does not allow for an implied right of contribution or indemnification"). The fact that Union Bank attempts to limit the scope of the indemnity it seeks by claiming in its Opposition that it is seeking only indemnity for its attorneys fees and costs in defending this action, does not change the analysis. The money Union Bank seeks is still indemnification and it would still be paid – if allowed – by the plaintiff in this action, which as discussed above, is essentially the Fund.

For the foregoing reasons, the Court concludes that Union Bank does not have standing under ERISA to bring a counterclaim for indemnification as a matter of law. As such, the Court GRANTS plaintiff's motion to dismiss the counterclaim WITH PREJUDICE.

**II.     Motion to Dismiss Third-Party Complaint**

In response to the complaint, Union Bank also filed a third-party complaint against the individual trustees of the Fund, seeking to hold them liable as co-fiduciaries for Union's Bank's conduct in calculating concentration limits. The third-party complaint alleges causes of action for beach of fiduciary duty, indemnification and contribution and asserts that the individual Trustees are "liable for contribution or equitable indemnification in the amount proportionate with their share of fault" and "if Union Bank is found liable for any of the claims in the underlying action, Third-Party Defendants are liable for indemnification of Union Bank under an ERISA plan document." Third-Party Complaint, ¶ 4.

---

[4] "A party seeking contribution seeks reimbursement based on his or her proportion of the fault, while an action for indemnity requires complete reimbursement and shifts the entire loss from the one who has been required to pay it to the one who should bear the loss. Thus, contribution may be the proper remedy, and indemnification is not available, when two parties are joint or concurrent tortfeasors and are both chargeable with actual negligence. A claim for contribution, unlike one for indemnification, requires a fact finder to apportion fault among the defendants." 18 Am Jur 2d Contribution § 2.

10

### A.   Indemnification and Contribution [Counts III, IV and V]

In Count III, Union Bank seeks indemnification under an ERISA plan document, requesting contractual indemnification of its attorney's fees, costs and other litigation expenses required to defend against the Board's claims in this action based on the indemnification provisions contained in the Custodian and Securities Lending Agreements. In Count IV, Union Bank seeks equitable indemnification under federal common law of ERISA as well as Section 502(a)(2) and (a)(3) and 29 U.S.C. § 1109(a) which allows for other "appropriate relief." In Count V, Union Bank seek contribution under federal common law of ERISA and under Section 502(a)(2) and (a)(3).

The Court finds these claims – which all seek indemnity and/or contribution from the individual trustees for Union Bank's benefit – to be barred. As discussed above, Union Bank does not have standing under Section 502(a) to bring these claims because Union Bank is *not* seeking relief on behalf of the Fund, but is instead seeking relief for itself. In the Ninth Circuit co-fiduciaries cannot seek indemnification or contribution for alleged breaches under the "common law" of ERISA.

The fact that Union Bank brought its third-party complaint against the individual trustees – as opposed to the counterclaim which sought recover against the Board of Trustees, representing the Fund – does not change this analysis. In *Kim*, the Ninth Circuit rejected an attempt by a fiduciary to seek contribution from other plan fiduciaries, who were all trustees of the fund at issue and where at least one third-party defendant (Kim) was sued individually, as trustee of the fund at issue. *Id.*, 871 F.2d at 1431-33. In *Call*, the Ninth Circuit rejected an attempt by a fiduciary to seek contribution from a co-fiduciary trustee.[5]  *Id.*, 881 F.2d at 628, 631-32.

Union Bank's other attempts to distinguish *Kim* and *Call* are likewise misplaced. Union Bank argues that *Kim* is distinguishable because in *Kim* the co-fiduciary third-party defendants were only

---

[5] Union Bank spends a significant amount of time discussing cases from outside the Ninth Circuit that have allowed actions for contribution or indemnity among co-fiduciaries under ERISA. *See* Opposition to Motion to Dismiss Third-Party Complaint [Docket No. 37] at 15-17. But, as the case Union Bank relies on most heavily recognized, the Ninth Circuit has unequivocally held that co-fiduciary causes of action for contribution or indemnity are not permitted under ERISA. *See, e.g., Trs. of the Auto. Mechanics Local No. 701 Pension & Welfare Funds v. Union Bank of Cal.*, 630 F. Supp. 2d 951, 952 (N.D. Ill. 2009) (recognizing that the Ninth Circuit, among other courts, has said "no" to the question of whether "a right to contribution or indemnity between co-fiduciaries under ERISA, both as a statutory matter and under the federal common law of ERISA" exists).

11

alleged to have approved and ratified the conduct that the Court concluded violated ERISA. Therefore, the third-party defendants could be liable only if the defendant fiduciary was liable. Here, Union Bank argues, it has alleged that the individual trustees are independently liable to the Fund – separate and apart of Union Bank's conduct. Union Bank's complaint, however, makes it clear that the individual trustees are allegedly liable because they failed to monitor and review the monthly statements provided by Union Bank and failed to make timely objections regarding Union Bank's calculation of contribution limits and investment decisions. *See, e.g.*, Third-Party Complaint, ¶ 4; *see also* Union Bank's Opposition to Motion to Dismiss Third-Party Complaint at 13:13-18. Therefore, if Union Bank is not liable to the Fund (because it reasonably and/or in good faith followed the investment guidelines in the Plan documents), then the individual trustees could *not* be independently liable for failure to monitor and review Union Bank's reasonable and good faith conduct. Union Bank has alleged no set of facts that could make the individual trustees liable for a breach of a fiduciary duty under ERISA separate and apart from the facts underlying the Fund's ERISA claim against Union Bank.

Union Bank assets that, unlike *Call* where the plan had already been made mostly or fully whole by the DOL settlement, here Union Bank's Third-Party Complaint provides an avenue for recovery for the Fund if the Court concludes that Union Bank did not breach its fiduciary duties and reasonably or in good faith followed the investment guidelines in the Plan documents. As just noted, however, Union Bank does not explain *how* the Trustees could be liable to the Fund for losses for ratifying or failing to stop Union's Bank's practice *if* Union Bank is not liable because it invested the Fund's assets in accordance with the Plan guidelines. Union Bank's unsupported argument that the Third-Party Complaint provides a necessary avenue to secure recovery for the Fund against the individual trustees is rejected.[6]

---

[6] Union Bank also relies on *Youngberg v. Bekins Co.*, 930 F. Supp. 1396 (E.D. Cal. 1996) which allowed a fiduciary to seek indemnity against a co-fiduciary under 502(a)(3). However, as the *Youngberg* court noted, the claim at issue there was not one "premised on plan asset management" – which it at issue in this case and which the *Youngberg* Court noted would arguably be barred by *Massachusetts Mut. Life Ins. Co. v. Russell*. *Id.*, at 1400. Instead, the case in *Youngberg* addressed whether a fiduciary (former employer) could seek indemnity from another fiduciary (plan administrator), on an ERISA claim brought by a beneficiary claiming he had been wrongfully denied long term disability benefits by the plan administrator. *Id.*, at 1398, 1400 ("Bekins here is not seeking contribution for an alleged violation of a fiduciary duty for which it would be liable to the plan. Rather, Bekins seeks

As Union Bank does not have standing, as a matter of law, to pursue its contribution and indemnity claims through a Third-Party Complaint under ERISA, the third-party defendants' motion to dismiss these claims is GRANTED without leave to amend.

### B    Breach of Fiduciary Duty and Co-Fiduciary Duties [Counts I & II]

Count I of the Third-Party Complaint is for breach of fiduciary duty against each of the members of the Board as individuals for their failure to monitor the performance of Union Bank under 29 U.S.C. section 1104(a)(1). Specifically, Union Bank alleges that the individual Trustees breached their fiduciary duties by: (1) failing to monitor and review the investment decisions and performance of Union Bank; (2) failing to notify Union Bank of any questions concerning Union Bank's method of calculating concentration limits; and (3) failing to notify Union Bank about their concerns over the Lehman Bond or the Higher Education Bond before the Lehman Brothers failure on September 15, 2008. Third-Party Complaint, ¶ 65. Union Bank asserts that "[i]f Union Bank is found liable, the equities in this case require Third-Party Defendants to bear their full share of responsibility for any alleged losses as a result of their own breaches of fiduciary duties to the Pension Fund." *Id.*, ¶ 67. Count II of the Third-Party Complaint is for beach of the Trustees' duties as co-fiduciaries with Union Bank under 29 U.S.C. section 1105(a), because each of the Trustees had knowledge of, enabled or participated knowingly in the failure to monitor and review the performance of Union Bank.

As discussed above, as a fiduciary Union Bank has standing under 502(a)(2) or 503(a)(3) to bring a claim of breach of fiduciary duties against the individual trustees *only* to the extent that Union Bank is seeking a remedy on behalf of the Fund. Union Bank does not have standing to bring these claims to seek relief on behalf of itself, *i.e.*, for indemnity or contribution. With respect to the first cause of action – for beach of fiduciary duty – the only factual allegations supporting that claim are that the individual trustees failed to monitor and review Union Bank's investment decisions; failed to notify Union Bank that it was employing the wrong method of calculating concentration limits; and failed to notify Union Bank that the individual trustees had concerns with the Bank's investment in the Lehman

---

indemnity under 29 U.S.C. § 1132(a)(3) in the event that Bekins is held liable for the payment of benefits to plaintiff."). *Youngberg* provides no support for Union Bank.

13

Bond. Third-Party Complaint, ¶65. The only relief Union Bank seeks for those violations is, if "Union Bank is found liable, the equities in this case require Third-Party Defendants to bear their full share of responsibility for any alleged losses as a result of their own breaches of fiduciary duties to the Pension Fund." *Id*., ¶ 67. Similarly, the facts supporting the claim for breach of co-fiduciary duty are only that the individual trustees "had knowledge of, enabled, or participated knowingly in the failure to monitor and review the performance of Union Bank" and "in the event Union Bank is held liable for a breach of fiduciary duty, the Third-Party Defendants, and each of them, are also liable as co-fiduciaries to the Pension Fund." *Id*., ¶ 70.

These claims, therefore, are substantively identical to the claims for contribution or indemnity which Union Bank does not have standing to pursue. Given Union Bank's own allegations, the trustees can only be liable for breach of fiduciary duty *if* Union Bank is liable for violating its duty to act as a prudent fiduciary in like circumstances or otherwise breached the Agreements governing its role in investing the Fund's assets. The liability of the individual trustees is directly derivative of the liability of Union Bank. There are no facts alleged by Union Bank that support an allegation that the individual trustees breached any fiduciary duty separate from Union Bank's alleged conduct. Moreover, the only relief sought from the individual trustees is that they be held personally liable for a portion of the losses sustained by the Fund *due to* Union Bank's conduct.

The Third-Party Complaint's claims for breach of the fiduciary duty, therefore, are DISMISSED. However, unlike the other claims which are barred as a matter of law, Union Bank is granted leave to amend the breach of fiduciary duty claims to the extent that Union Bank is able to allege facts that the individual trustees engaged in conduct separate and apart from the conduct of Union Bank, that caused a loss to the Fund.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiff's motion to dismiss the Counterclaim with prejudice. The Court GRANTS the Third-Party defendants' motion to dismiss the Third-Party Complaint. Counts III, IV and V are dismissed with prejudice. Counts I and II are dismissed with leave to amend. If Union Bank chooses to file an amended third-

14

party complaint, it may do so on or before **April 18, 2011.**

**IT IS SO ORDERED.**

Dated: April 6, 2011

SUSAN ILLSTON
United States District Judge